IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **KELLI BAUGH and JUSTIN BAUGH,** | ) |
| | ) **Civil Action No. 4:11-cv-00525-RBH** |
| **Plaintiff(s),** | ) |
| | ) |
| v. | ) |
| | ) |
| **BAYER CORPORATION, BAYER** | ) |
| **HEALTHCARE, LLC, BAYER** | ) |
| **PHARMACEUTICALS CORPORATION,** | ) |
| **BAYER HEALTHCARE** | ) |
| **PHARMACEUTICALS, INC., BERLEX** | ) |
| **LABORATORIES, INC., and BERLEX, INC.,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

**DEFENDANT BAYER HEALTHCARE PHARMACEUTICALS, INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS**

Pursuant to Federal Rule of Civil Procedure 56(a), defendant Bayer Healthcare Pharmaceuticals, Inc. ("Bayer") hereby files this Reply in Support of Its Motion for Summary Judgment Based on the Statute of Limitations.

**INTRODUCTION**

Based on Ms. and Mr. Baugh's ("Plaintiffs") own admissions, the South Carolina statute of limitations bars their claims for relief in this case. The uncontested facts demonstrate that Plaintiffs believed that Mirena® caused them injury more than three years before filing suit. Specifically, Plaintiffs admit:

> 1) Ms. Baugh knew that Mirena® caused her alleged excessive bleeding as early as December 2005, *see* Pls.' Mem. in Opp. to Def.'s Mot. for Summ. Judg. ("Opposition"), ECF No. 51 at 2;

1

2) By early 2006, Plaintiffs believed that Ms. Baugh's significant bleeding and intractable pain were caused by Mirena®[1];

3) Ms. Baugh's treating physician associated these same alleged injuries to Mirena® and told her so as early as March 2006[2], *see* Opp. at 3; *see also* Mem. at 3-4;

4) Ms. Baugh wanted her Mirena® removed as early as March 24, 2006 because she attributed her pain and bleeding to the Mirena®, *see* Opp. at 3;

5) Ms. Baugh scheduled three different surgeries between March 24, 2006 and May 1, 2006 to have her Mirena® removed to stop the alleged pain and suffering it was causing[3], *see* Exhibit 1 to Mem., ECF No. 44-2 at 21 & 24-25 (attaching pages 275 & 288-89 of Aug. 2, 2012 Deposition Transcript of Kelli Baugh ("Baugh Dep.")); *see also* Baugh Dep. at 298 (Ex. 1);

6) The alleged injuries that Ms. Baugh knew were caused by Mirena® continued and worsened throughout 2006 and 2007, *see* Mem. at 5-7;

7) Mr. Baugh called Bayer in December of 2007, *see* Dec. 19, 2007 Adverse Event Report (Ex. 2), because the alleged injuries, including Ms. Baugh's excruciating pain, the "emotional disconnect," and the state of their "sexual relationship" had gotten so bad that he "wanted some answers,"[4] *see* Opp. at 9; *see also* Mem. at 7-8; and

---

[1] In their Opposition, Plaintiffs incredibly state that Ms. Baugh did not have reason to suspect that Mirena® was the source of her pain and bleeding. As detailed in Bayer's Memorandum and as admitted by Plaintiffs on numerous other occasions, this statement is false. *See* Def.'s Mem. of Law in Support of Mot. for Summ. Judg. ("Memorandum"), ECF No. 44-1 at 4-5; *see also* Opp. at 4 (noting Dr. Goldstein associated Mirena® with Ms. Baugh's severe cramping and backache).

[2] Plaintiffs unilaterally interpret Dr. Goldstein's records to claim that he did not attribute the "severe cramping *with* Mirena IUD x 5 months" to Mirena®. *See* Opp. at 3. This interpretation is contrary to Dr. Goldstein's sworn testimony. Indeed, they concede later in their Opposition that Dr. Goldstein did attribute Ms. Baugh's alleged symptoms to Mirena®. *See* Opp. at 4.

[3] Ms. Baugh cancelled all three surgeries because she lacked the funds to pay for the surgeries.

[4] While Plaintiffs try to explain Mr. Baugh's call to Bayer in their Opposition, they never refute that the call was made by Mr. Baugh in December 2007. Nor do they offer any explanation why

2

8) Plaintiffs filed this lawsuit against Bayer on January 21, 2011, **more than five years** after first knowing that Bayer's product, Mirena®, allegedly caused the injuries to Ms. Baugh and over three years after Mr. Baugh made his call to Bayer.

Under South Carolina law, the three-year statute of limitations governing Plaintiffs' claims against Bayer started to run when they knew or should have known that they had *some claim* against Bayer. The evidence and admissions in this case demonstrate that Plaintiffs knew they had injuries related to the Mirena® more than 3 years before they filed suit. Thus, based on Plaintiffs own sworn testimony and the concessions above, the statute of limitations bars this case.

Plaintiffs, in an attempt to salvage their case, offer a Hail Mary theory in their Opposition. They argue that the limitations period did not start to run until they knew about the final injuries they attribute to Mirena® – perforation, endometriosis, and hysterectomy. Not surprisingly, Plaintiffs do not cite any case law to support this argument, which is clearly contrary to South Carolina law as interpreted by both the South Carolina Supreme Court and the Fourth Circuit Court of Appeals.

## LAW AND ARGUMENT

**I.   The Statute of Limitations Began to Run No Later Than March 24, 2006, when Ms. Baugh Knew She Had Been Injured by Mirena®.**

In South Carolina, a plaintiff must file suit within three years of knowing that he/she had a cause of action. *See* S.C. Code Ann. § 15-3-535 (West 2012). South Carolina recognizes the discovery rule, and the South Carolina Supreme Court explained the impact of the rule on the statute of limitations in *Wiggins v. Edwards*, 442 S.E.2d 169 (S.C. 1994). The *Wiggins* Court

---

a husband would call the manufacturer of a prescription drug to complain about injuries to his wife if he did not associate those injuries to the manufacturer's drug.

3

expressly held that the statute of limitations "begins to run for **all** claims" when a plaintiff knows some claim against a defendant might exist. *Id.* at 170 (citation omitted) (emphasis added).

Plaintiffs do not dispute Bayer's statement of the law on the statute of limitations. Indeed, the law cited by Plaintiffs supports Bayer's, not Plaintiffs', arguments.[5] As noted by Plaintiffs, the law of South Carolina imposes a duty of "reasonable diligence" on an injured party to act promptly to investigate a potential claim. *See* Opp. at 7 (citing *Epstein v. Brown*, 610 S.E.2d 816, 818 (S.C. 2005)). The statute of limitations is triggered not merely by knowledge of an injury, but by knowledge of facts that should alert the injured party to a potential cause of action against another party. *See* Opp. at 7 (citing *True v. Montheith*, 489 S.E. 615, 617 (S.C. 1997)).

Here, there is no doubt that Plaintiffs knew Ms. Baugh had injuries which she attributed to Mirena® as early as 2006. Ms. Baugh testified under oath that by 2006 she suffered from *inter alia*: 1) menstrual bleeding so severe that she had to leave work and feared that she was bleeding to death; 2) pelvic pain and cramping that was so bad that she had to miss work on multiple occasions and required her to forego a job reassignment and leave her employer in 2006, *see* Baugh Dep. at 40-41 (Ex. 1), and 3) excruciating pain on intercourse, *see* Mem. at 3-8, 11, & 13 (detailing full extent of plaintiffs' alleged pre-January 2008 injuries, including her complaints to Mr. Baugh and her treating physicians). Plaintiffs also admit they and Ms.

---

[5] Plaintiffs are incorrect when they argue that Bayer bases its statute of limitation argument on *Tollison v. B & J Machinery Co., Inc.*, 812 F. Supp. 618 (D.S.C. 1993). Bayer did cite *Tollison* parenthetically as a case referenced by the South Carolina Supreme Court in *Wiggins*. *See* Mem. at 9-10. But Bayer relies on the South Carolina Supreme Court's opinion in *Wiggins* and S.C. Code Ann. § 15-3-535 as the basis for its argument. Further, it is disingenuous for Plaintiffs to argue that Bayer asserted anything regarding Ms. Baugh and her perforation. As Plaintiff detailed in their Opposition, Bayer did not mention perforation in its Motion for Summary Judgment.

Baugh's doctor, William Goldstein, associated these alleged injuries to Mirena® by March 24, 2006. *See, e.g.*, Mem. at 3-5. As a result, Plaintiffs' limitations period expired long before January 21, 2011 when they filed suit.

## II. Plaintiffs' Knowledge of Perforation, the Timing of Ms. Baugh's Hysterectomy, and Her Later Injuries Are Irrelevant.

Plaintiffs spend considerable time in their Opposition arguing that the statute of limitations did not begin to run until January 24, 2008, when they allegedly knew that the Mirena® had perforated Ms. Baugh's uterus. Plaintiffs' argument misses the mark.

On this issue, the law is clear. Plaintiffs do not have to understand the full extent of their injuries to start the statute of limitations. They just have to know that they have **an injury** and attribute that injury to the defendant. *Wiggins*, 442 S.E.2d at 170. The *Wiggins* court further explained that a "full-blown" theory of recovery is not necessary to trigger the statute of limitations. *Id.* The South Carolina Supreme Court, in the *Epstein* case (cited and relied on by Plaintiffs in their Opposition) stated it best: "[t]his Court has recognized that, under the discovery rule, the statute of limitations begins to run when a reasonable person of common knowledge and experience would be on notice that a claim against another party **might exist**. **The fact that the injured party may not comprehend the full extent of the damage is immaterial.**" *Epstein,* 610 S.E.2d at 821 (emphasis added).

The United States Court of Appeals for the Fourth Circuit, interpreting South Carolina law, has also determined that a plaintiff need not comprehend the entirety of her injury to start the running of the statute of limitations. *See Barnes v. Schering Corp.*, No. 93-1638, 1994 WL 20110 (4th Cir. Jan. 26, 1994) (Ex. 3). The facts in *Barnes* are remarkably similar to those in this case. A South Carolina woman, Rhonda Barnes, suffered from gynecological problems that

caused her pain.  *Id.* at *1.  She visited her physician in July 1984, and he informed Ms. Barnes that her symptoms were related to a pharmaceutical product.  *Id.*  Although Ms. Barnes' symptoms persisted, she improved somewhat until November 1986, when her condition deteriorated.  *Id.*  Ultimately, the severity of her pain caused Ms. Barnes to undergo a hysterectomy in September 1989.  *Id.*  She brought a products liability action in November 1991.  *Id.*  The defendant filed a motion for summary judgment arguing that the lawsuit was barred by the South Carolina statute of limitations because Ms. Barnes knew her injuries were related to the product as early as 1984, yet she did not file suit until 1991.[6]  *Id.*  Plaintiff argued that while she knew of the gynecological problems in 1984, she did not know and could not have known that she would have to undergo a hysterectomy.  *Id.* at *3.  Thus, Ms. Barnes contended, the statute of limitations should not have started until she learned of her ultimate injury, the hysterectomy.  *Id.*  The trial court rejected Ms. Barnes' argument and granted summary judgment based on the statute of limitations.  Ms. Barnes appealed.  The Fourth Circuit Court of Appeals affirmed the dismissal, holding that the statute of limitations started to run when Ms. Barnes learned that her early pain was caused by the defendant's product, not when she knew of the ultimate injury.  *Id.*

     Mr. and Ms. Baugh ask this Court to do exactly what the Fourth Circuit refused to do in *Barnes*.  They want the Court to ignore that Ms. Baugh attributed her alleged injuries to Mirena® as early as 2005.  Plaintiffs' request is not only contrary to the Fourth Circuit's holding in *Barnes*, it is contrary to South Carolina law which mandates that the statute of limitations begins

---

[6] The statute of limitations at the time of the *Barnes* lawsuit was six years.  However, the length of the statute of limitations has no impact on the relevant analysis.

to run for **all** claims when a plaintiff knows <u>some</u> claim against a defendant <u>might</u> exist. *See Wiggins*, 442 S.E.2d at 170; *see also Epstein*, 610 S.E.2d at 818.

## CONCLUSION

For the reasons set forth above and in Bayer's opening Memorandum, Plaintiffs' claims are barred by South Carolina's three-year statute of limitations. Accordingly, Bayer is entitled to summary judgment.

Respectfully submitted,

MCNAIR LAW FIRM, P.A.

By  s/Celeste T. Jones
    Celeste T. Jones Fed ID 2225
    Andrew G. Melling Fed ID 7882
    Post Office Box 11390
    Columbia, SC 29211
    Telephone:  (803) 799-9800
    Facsimile:  (803) 753-3278

    *Attorneys for Defendants*